**SPROUL v. LEVIN.**

No. 10737.

Circuit Court of Appeals, Eighth Circuit.

March 6, 1937.

Patrick H. Cullen, of St. Louis, Mo. (Clem F. Storckman, Cullen Coil, W. W. Henderson, and Harry Troll, all of St. Louis, Mo., on the brief), for appellant.

Ellison A. Poulton and Noah Weinstein, both of St. Louis, Mo., for appellee.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

The appeal herein was granted by this court, and involves the validity of a summary order made by the court nisi, directing the appellant to pay into the registry of the court the sum of $16,500, found by the court to be in the hands of appellant and alleged by appellee-trustee to belong to and to be a part of the assets of H. J. Kattelman Company, bankrupt.

The case is a companion case to that of Harold J. Kattelman, Bankrupt v. William S. Madden, Receiver, etc., 88 F. (2d) 858, opinion of this court wherein has this day been filed. The facts on which the case is bottomed arose during the hearing of the evidence on the motion by Kattelman for release from imprisonment. So it is wholly interrelated to the Kattelman Case, and has been presented here on a joint record therewith.

In course of the hearing on the above motion, Kattelman, his wife, Gladys L. Kattelman, and his sister-in-law, Mildred Logeman, gave testimony in alleged explanation of his (the bankrupt's) disposition of the $39,550 in cash in controversy in the Kattelman Case, supra, which testimony tended to show that on or about June 13, 1935, and June 25, 1935, and some three weeks prior to the filing against Kattelman of the involuntary petition in bankruptcy, he had drawn from a bank of which he was a depositor the sum of $39,205, in cash, which he took to his residence and gave to his wife, Gladys L. Kattelman, in payment of alleged loans aggregating some $42,000 or $43,000, made by her to him in 1930 and 1931, out of money belonging jointly to his wife and her sister, Mildred J. Logeman.

This money was kept by the wife of Kattelman in her bedroom, till some time between the 4th and 12th of July, 1935, when her sister, Mildred Logeman, coming to visit the Kattelmans, the wife gave the sister $20,000 in the currency as received by her, in alleged payment of the sister's interest in the loans to Kattelman.

As to this $20,000, Mildred Logeman testified that it was paid to her after dark, some time between July 4, 1935, and July 12, 1935, that she took it to the home of her mother, put it in a screwtop can and buried it in the ground in the back yard under the grape arbor after dark, where it remained till the night of September 24, 1935, when she dug it up, kept out $3,500 for personal expenses and took the balance of $16,500 of it to the home of Kattelman's mother and there turned it over to the appellant (who is an uncle of Kattelman's wife) who agreed to take it to Canon City, Colo., and invest it for her at 8 per cent. interest.

Appellant, testifying for Kattelman on the motion for release of the latter, corroborated the testimony of Mildred Logeman as to her having delivered to him, about September 24, 1935, the sum of $16,500 in currency, which he said he had agreed to take with him to Colorado and invest there for her. He gave her a receipt for this money, put it in a suitcase and took it by automobile to his home in Canon City, Colo.; there he did not invest it but put it in his office safe, where the money still was on August 4, 1936, at the time of the hearing, in the original bills in which he had received it from Mildred Logeman.

Thereupon, and on August 4, 1936, appellee filed an application for an order of court requiring appellant forthwith to turn over to the appellee, trustee herein, this sum of $16,500, admitted by appellant to be then in his hands and which had come into his hands from Mildred Logeman, in the manner and at the time already set forth. The trial court issued on the same day an order to appellant to appear before the court on the next day, August 5, and show cause if any he had, why a turnover order should not be made and directed to him to turn over to the trustee the said sum of $16,500. Appellant filed motions to quash the citation or order to show cause; for a continuance; for a trial by a jury and to disqualify the trial judge on account of alleged bias and prejudice; all of which were overruled, or as to the motion to disqualify the judge, stricken from the record. No formal return, or pleading to the order to show cause is found in the record; but the order of the court, called in the record the turnover order to appellant, sets forth that appellant filed a return, and that he appeared in person and by counsel who presented arguments. No further evidence seems to have been heard by the court, outside of that which had been heard on the motion of Kattelman for release. After such hearing, the court entered an order requiring appellant within ten days to pay into the registry of the court the $16,500 in dispute, to abide disposition thereof by the court, and that appellant abide the further orders of the court. From these orders an appeal was allowed by this court, and therein it was ordered and provided that the turnover order on appellant should be stayed pending hearing of this appeal, and enjoining appellant from disposing of the $16,500, in cash in his possession, until the further order of this court.

The contentions of error urged by appellant are that the apparent facts disclose a situation wherein a plenary suit was necessary, and that the trial court had no power to hear the case summarily, as was done. And that since it clearly appeared in the evidence taken in the Kattelman hearing that appellant was a mere bailee, the owner, or claimant of the $16,500, should have been a party to the hearing and thus have been allowed her day in court. We are of the view that both of these contentions of appellant are well taken and should be sustained.

■ The hearing leading up to the making of the orders complained of was summary; no evidence whatever was heard on the issues, which were made by the application of the trustee for a turnover order and the return thereto if any filed by the appellant. We have been, as already said, unable to find any return in the record, and if there was one, we are not advised of its contents. Reliance for the facts in the case was based wholly on the evidence which the court heard in another proceeding in which appellant was a mere witness and to which he was not a party. Appellant, according to this evidence, was a mere bailee, a stranger to the record, and, except as such, he claimed no interest in the money in dispute. So far as appellant was concerned, the owner of the money was Mildred Logeman. If any credence could be attributed to the testimony of Kattelman, his wife, and Mildred Logeman taken, and heard in the Kattelman hearing for release from imprisonment (and about this we here express no opinion), this evidence upon its face tended to show that the money in dispute had been paid to Kattelman's wife and Mildred Logeman (in satisfaction in part, of certain alleged loans) and prior to the filing of the petition in bankruptcy against Kattelman. It is certain that this money was never in the possession of the trustee, or in the custody of the court, either actually or constructively. In order to find that the court had such constructive possession, it must have been shown either that the property in dispute was in the physical possession of the bankrupt at the time the petition in bankruptcy was filed against

him, but had not been by him delivered to the trustee, or that the property had been so delivered to the trustee, but had thereafter been wrongfully taken from his possession, or that the property was in the hands of a mere agent or bailee of the bankrupt, or that the property was in the hands of one, who made no claim to it, or that the property was in the hands of some one who did claim it, but whose claim was colorable only. Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770.

 Hardly is there any question of law better settled than that a court of bankruptcy has no jurisdiction to hear and adjudicate in a summary proceeding a controversy as to title and ownership of property held adversely to the bankrupt estate and against the consent of the adverse claimant, and where such property came into the claimant's possession prior to the filing of the petition in bankruptcy, exceptions above set out excepted; but in such case, resort must be had by the trustee to a plenary action. Harrison v. Chamberlin, 271 U.S. 191, 193, 46 S. Ct. 467, 70 L.Ed. 897; Chandler v. Perry (C.C.A.) 74 F.(2d) 371. It seems elementary that since the action taken by the trial court, whereby he entered a summary order to appellant to turn over the money in dispute, was wholly bottomed on evidence heard in a proceeding to which Mildred Logeman was a stranger, and since this evidence tended to show that she came into possession of this money prior to bankruptcy and in payment of a debt due to her, she was a necessary party to any proceeding which made disposition of it. Upon the face of this evidence so heard, she made claim to the money as her own, and also upon the face of it, appellant was a mere bailee for her and not for the bankrupt. She was a necessary party therefore to any proceeding which adjudged title to it or possession of it.

 Appellee urges that the order made herein was not appealable. We are of opinion that it was. Appellant was a bailee, claiming no personal title to the money, but claiming possession of it under his contract of bailment. The order made by the court requiring him to turn the money into the registry of the court passed his possession of it to the possession, or custody of the court, and such

order we think was as to appellant a final one, and so we think appealable.

It results from what has been said that the judgment of the court should be reversed and remanded to the end that it may be dismissed, and that the injunctive order made and entered by this court, as a condition of the granting of the appeal herein, and which enjoined appellant from disposing of said sum of $16,500, pending further order, be continued in full force and effect until sixty days after the mandate herein shall have been sent down. And so it is ordered.