In re NORWOOD AVIATION, INC.

George BEVILACQUA, Appellant,

v.

BOSTON METROPOLITAN AIRPORT, INC., Appellee.

Bankruptcy No. 85–2074–C.

United States District Court,
D. Massachusetts.

July 14, 1986.

Steven J. Marullo, Boston, Mass., for appellant.

Herbert Rogers, Dedham, Mass., Counsel Creditors Committee, Lewis A. Sassoon and George F. Gormley, Boston, Mass., for appellee.

## MEMORANDUM

ANDREW A. CAFFREY, Chief Judge.

This is an appeal from an order entered by the Honorable James N. Gabriel, U.S. Bankruptcy Judge, allowing the motion for relief from stay of the appellee, Boston Metropolitan Airport, Inc. ("BMA"). The lifting of the stay enabled BMA, the land-

lord, to evict Norwood Aviation, Inc. ("Norwood Aviation") from the premises at Norwood Airport. At this time, the appellant is George Bevilacqua. Bevilacqua was substituted as the appellant in place of the bankrupt Norwood Aviation following his purchase of Norwood Aviation's assets, including the lease which is the subject matter of this appeal.

In 1969 Norwood Aviation and BMA, with the approval of the Town of Norwood, executed a twenty-five year lease for certain parcels of land at Norwood Airport. Norwood Aviation fell behind in its rent payments and, in March of 1983, BMA served Norwood Aviation with a fourteen days' notice to quit pursuant to Massachusetts law. See Mass.Gen.Laws Ann. c. 186, § 11. On June 27, 1983 BMA filed a summary process action in the district court department, Dedham division, of the Massachusetts state court. Norwood Aviation was served with the summons and answered, but did not pay the rent arrearages prior to the answer date and thus did not cure the termination of its lease.[1] BMA and Norwood Aviation, however, did agree to a number of continuances for the hearing on the case. On November 29, 1983 BMA and Norwood Aviation executed a letter of agreement which stipulated that the trial in the summary process action would be continued until January 5, 1984, that Norwood Aviation and BMA had executed an Agreement for Judgment for BMA for possession and damages which would be held in escrow until the hearing date, that BMA would meet with Norwood Aviation and prospective investors or purchasers to negotiate a settlement and long-term lease, and that if a settlement and agreement were not reached by the hearing date, BMA could file the Agreement for Judgment and Norwood Aviation would vacate the premises.

Although the parties met once during this interim period, no settlement was reached. Bevilacqua, a shareholder in Norwood Aviation, contacted BMA about paying the judgment amount in exchange for reinstatement of the lease. BMA refused this offer, stating that an agreement to reinstate the lease would have to take into account the rent escalation clause in the original lease and that the lease would no longer include a parcel of land upon which a "fuel farm" was located.

Sometime between 9:30 a.m. and noon on the morning of January 5, 1984, counsel for BMA filed the Agreement for Judgment in the Dedham district court. At 9:05 the same morning, Bevilacqua tried to contact BMA's counsel and obtain instructions concerning payment of the rent arrearages. At that time, Bevilacqua did not actually possess the funds necessary to make the tender; he had only the prospect of a loan. Bevilacqua made no further effort to reach BMA's counsel until about 5:00 p.m. that day, when Bevilacqua's attorney hand delivered to BMA's counsel a letter stating that Bevilacqua was willing to tender the full amount of the judgment. At no time did Bevilacqua actually tender funds. An execution of the Agreement for Judgment was issued on January 9, 1984. Norwood Aviation filed a petition for bankruptcy on January 20, 1984 and thereby became entitled to the protection for bankrupt estates afforded by the automatic stay provisions of 11 U.S.C. § 362.

In May of 1984, BMA filed a motion for relief from stay in the bankruptcy court. Following a hearing and the submission of briefs by the parties, the Bankruptcy Court found that the lease between BMA and Norwood Aviation had been properly terminated before Norwood Aviation filed its bankruptcy petition. The Bankruptcy Court therefore granted BMA's motion for relief on February 27, 1985, 47 B.R. 155. Norwood Aviation appealed the order.[2] In

---

1. Under Massachusetts law, in an action by a landlord to recover possession of the premises following a tenant's failure to pay rent due, a tenant may prevent termination of his lease by paying or tendering "to the landlord or to his attorney all rent then due, with interest and costs of suit." Mass.Gen.Laws Ann. c. 186, § 11.

2. At the hearing on this appeal, this Court questioned whether the order at issue was an interlocutory or final determination. Although the

July of 1985, Bevilacqua acquired the assets of Norwood Aviation, including the right to this appeal.

A bankruptcy court's findings of fact are accepted by a reviewing district court unless they are clearly erroneous. *E.g., In re Appeal of U.I.P. Engineered Products Corp.,* 43 B.R. 480, 482 (N.D.Ill.1984). In this case, the appellant asks this Court to reject the Bankruptcy Court's factual determinations and find that the lease between Norwood Aviation and BMA was not terminated and that Bevilacqua, as the current party-in-interest, is entitled to occupy the premises covered by the lease.

■ The appellant first asserts that BMA refused to negotiate a settlement under reasonable terms as required by the November 29, 1983 letter of agreement and that therefore Norwood Aviation was excused from performing, that is, from tendering the overdue rent payments in order to cure the summary process action.[3] Under the terms of the letter of agreement, BMA agreed "to meet with representatives of Norwood Aviation and prospective investors or purchasers and to negotiate a settlement of all amounts owed by Norwood Aviation to BMA and a long term lease ...." According to the record, BMA and Norwood Aviation held a meeting during the period covered by the agreement to discuss these issues but the prospective investor failed to attend. There is no suggestion that other meetings were scheduled in which BMA refused to participate. Moreover, Bevilacqua, both personally and through counsel, spoke to BMA and its representatives concerning payment of the rent arrearages and terms of a new lease, but the parties were unable to agree upon a mutually satisfactory solution. BMA apparently intended to enforce a rent escalation clause in the lease with Norwood Aviation, wanted full payment of all rent arrearages, and would not renew the lease of the parcel of land containing the "fuel farm." According to Bevilacqua, BMA's proposed terms made the business unprofitable. It appears, therefore, that BMA did not refuse to discuss settlement, but merely that Bevilacqua did not like BMA's proposals. Based on the foregoing discussion, I rule that BMA fulfilled its obligation to negotiate under the letter of agreement and that Norwood Aviation was not excused from performance thereunder.

■ The appellant also asserts that his offer on January 5, 1984 to pay in full the rent owed by Norwood Aviation barred further summary process action. Under Massachusetts law, a tenant who has received a fourteen days' notice to quit for nonpayment of rent has until the day an answer is due to cure existing defaults and avoid termination of the lease. Mass.Gen.Laws Ann. c. 186, § 11. In this case, the parties extended the statutory cure deadline by their letter of agreement, which stipulated that if a settlement and agreement were not reached "by the hearing date," then

---

order was dispositive on the issue of continuation of the automatic injunction against BMA pursuant to 11 U.S.C. § 362, the order did not settle all claims with regard to the bankrupt. In bankruptcy cases, however, orders which finally dispose of discrete issues may be separately appealable. *In re Saco Local Development Corp.,* 711 F.2d 441, 444 (1st Cir.1983). The concept of "finality" is broader in bankruptcy proceedings than in ordinary litigation. *In re Leimer,* 724 F.2d 744, 745 (8th Cir.1984). Orders concerning stays, which are a type of injunction, may or may not be interlocutory, depending on how final the order is in effect. *Id.* at 746. In this case, the order removes the leasehold from the bankrupt estate and evicts the appellant from the premises. I rule that this effect is sufficiently final to render the order appealable.

Even if the order were interlocutory, this Court could, and would, exercise its discretionary power pursuant to Rule 8003 and, after granting leave to appeal, decide the matter as an interlocutory appeal. I note that in this case neither party has contested this Court's jurisdiction and the merits of the issue have been thoroughly argued and briefed.

3. The appellant, Bevilacqua, asserts that he was also excused from performance under the letter agreement. I note that Bevilacqua was not a party to the agreement but benefitted from its terms only as a prospective investor or purchaser of Norwood Aviation. Since Bevilacqua had no duties under the agreement, there was nothing from which he could be excused.

BMA could file the Agreement in Judgment executed by them. A review of the papers before this Court shows that Norwood Aviation and BMA, the parties to the agreement, understood this to mean that the deadline for Norwood Aviation to effect a cure was the time their case would be called in the Dedham district court on January 5, 1984. The parties knew from past experience that continuances in summary process actions were called between 9 and 9:30 a.m. Bevilacqua contends that his telephone call to the office of BMA's counsel at 9:05 a.m. on the date of the hearing requesting delivery instructions of the amount owed cured the summary process action against Norwood Aviation. Where the parties to the letter of agreement anticipated that the summary process action which led to the agreement might be before the court at the time Bevilacqua made the call, his offer was not presented in a manner likely to reach the necessary parties in a timely fashion.

 Even if Bevilacqua's call had been timely, it was not sufficient to effect a cure. The Massachusetts summary process statute requires that all past due rent be paid or tendered to cure the termination of a lease for nonpayment of rent. Mass. Gen.Laws Ann. c. 186, § 11. It has long been the law in Massachusetts that

> [t]o constitute a valid tender the money must be actually produced and offered to the person who is entitled to receive it .... A mere offer to pay or a statement that the party has the money and is ready and willing to pay, without actual production of it, is not sufficient to constitute a valid tender.

*Mondello v. Hanover Trust Co.*, 252 Mass. 563, 567, 148 N.E. 136 (1925). The evidence shows that Bevilacqua never produced the money necessary to cure Norwood Aviation's default and, in fact, did not have the funds to do so at any time on January 5, 1984. BMA never refused any actual proffer of money or declared that it would not accept payment of the rent arrearages to cure the termination of the lease as allowed by Massachusetts law. What may

or may not have happened had Bevilacqua handed BMA the overdue rent is not at issue here. The fact is that no tender was made and thus no cure was effected. I rule that the Agreement for Judgment was properly filed and that execution of the judgment was obtained prior to the debtor's filing of his petition in bankruptcy.

Finally, the appellant urges this Court to find that the Bankruptcy Court was clearly erroneous when it refused to find that BMA acted in bad faith under the terms of the letter of agreement. On the basis of the evidence in this case, I concur with the Bankruptcy Court on this issue, and I find and rule that BMA did not act in bad faith.

Order accordingly.