# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2434

_____

|  |  |  |
|---|---|---|
| In re: M & S Grading, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| ----------------------------------------------- | * | |
| | * | |
| Contractors, Laborers, Teamsters and | * | |
| Engineers Health and Welfare Plan; | * | |
| Contractors, Laborers, Teamsters and | * | |
| Engineers Pension Plan; Dean Hightree; | * | Appeal from the United States |
| Kim Quick; Tom Merksick; Calvin G. | * | District Court for the |
| Negus; Vic J. Lechtenberg and Eugene | * | District of Nebraska. |
| Lea, Trustees, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| James Killips, Trustee, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 14, 2008
Filed:  May 14, 2008

_____

Before MURPHY, BRIGHT, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Two employee benefit plans and their trustees sought an order from the bankruptcy court[1] requiring the Chapter 7 bankruptcy trustee to show cause why he should not be found in contempt for failing to pay contributions ordered while the debtor's case was in Chapter 11. The bankruptcy court denied the motion and the plans appealed to the district court.[2] That court dismissed the appeal, concluding that denial of the motion for an order to show cause was not a final appealable order. The plans appeal, and we dismiss for lack of jurisdiction.

## I.

The Contractors, Laborers, Teamsters and Engineers Pension and Health and Welfare Plans (the plans) are multiemployer plans which provide health, pension, and welfare benefits to eligible employees in the area of Omaha, Nebraska. After M & S Grading, Inc. (M & S) filed a petition for Chapter 11 reorganization in 2002, it assumed collective bargaining agreements and agreed to continue making contributions to the employee benefit plans as it continued in business. The plans continued to provide benefits to the employees, but M & S fell behind in its payments. The plans moved the bankruptcy court to compel prompt payment of the delinquent contributions, and in December of 2004 the court ordered M & S to make timely contributions. Later that month James Killips was appointed as Chapter 11 trustee, but the company's attempted reorganization failed and in June 2005 the case was voluntarily converted to Chapter 7. Killips continued on as Chapter 7 trustee.

In June 2006, the plans filed a motion asking the bankruptcy court to order the trustee to show cause why he should not be held in contempt for failing to make

[1]The Honorable Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

[2]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

timely payments, as required by the December 2004 order issued when M & S was still in Chapter 11. Although the delinquent payments involved amounts due for the months of November and December 2004 and January 2005, the plans waited approximately a year and a half, and until after M & S was in Chapter 7, before filing the motion to show cause why the trustee should not be held in contempt. After a hearing the bankruptcy court denied the motion in October 2006, noting that the funds under the trustee's control were subject to a perfected lien held by the First National Bank of Omaha. When M & S was Chapter 11 debtor in possession before the trustee was appointed, M & S had been able to use cash collateral to make contributions to the plans but the trustee did not clearly have that right. Moreover, the bankruptcy court found no evidence that the trustee was even aware of the December 2004 order to make timely contributions or that he intentionally failed to comply with it. That order had been directed to the debtor in possession and predated the trustee's appointment. The court concluded that the request for payment of delinquent contributions and liquidated damages sought by the show cause motion would be more appropriately resolved in the separate adversary proceeding the plans had brought seeking the same monetary relief.[3]

The plans appealed the order denying the show cause motion to the district court and M & S moved to dismiss, to stay the briefing schedule, and for an expedited ruling to avoid legal costs and fees on an appeal of what it termed an unreviewable order. The debtor pointed out that the Chapter 7 estate had limited assets and argued that they should be conserved for distribution to creditors and for estate administration. The district court granted the motion to dismiss, concluding that the order denying the motion to show cause was not subject to review because it was not a final order. The court also declined to grant leave for an interlocutory appeal and denied the plans' motion for rehearing. The plans appeal, arguing that the order

---

[3]The bankruptcy court subsequently granted the trustee's motion for summary judgment in the adversary proceeding. The district court affirmed, and the plans appealed. Their appeal has been briefed but not yet heard.

denying the show cause motion was a final order and alternatively, that the order was either subject to review under the collateral order doctrine or was an appealable interlocutory order. The trustee responds that the order is not appealable and that the district court correctly dismissed the appeal for lack of jurisdiction.

We sit as a second court of review in bankruptcy matters, generally applying the same standards of review as the district court and reviewing the bankruptcy court's factual findings for clear error and its conclusions of law de novo. See Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.), 235 F.3d 375, 379 (8th Cir. 2000). Chapters 7 and 11 of the Bankruptcy Code establish different types of proceedings with fundamentally different goals. As the Supreme Court has explained, "[w]hereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors." Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 389 (1993); see also United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983) (under Chapter 11 "a troubled enterprise may be restructured to enable it to operate successfully in the future").

The Bankruptcy Code regulates Chapter 7 liquidation proceedings, dictating the order in which claims are to be paid, see 11 U.S.C. § 726, and defining the duties of a Chapter 7 trustee. See 11 U.S.C. § 704. The obligations of a Chapter 7 trustee differ in some significant respects from those of a Chapter 11 trustee. While the Chapter 11 trustee is involved with reorganization of the business, the Chapter 7 trustee is entrusted with "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves, and clos[ing] such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1); cf. 11 U.S.C. § 1106 (duties for Chapter 11 trustee).

-4-

II.

Although the parties focus primarily on the district court's jurisdiction, the first issue for us is whether we have jurisdiction over the appeal. We have an independent obligation to examine our jurisdiction and must address any jurisdictional problems we perceive even if the issue has not been raised by the parties. Int'l Ass'n of Firefighters v. City of Clayton, 320 F.3d 849, 850 (8th Cir. 2003), citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990); Yukon Energy Corp. v. Brandon Inv., Inc. (In re Yukon Energy Corp.), 138 F.3d 1254, 1258 (8th Cir. 1998).

Jurisdiction over bankruptcy appeals is governed by 28 U.S.C. § 158. Our jurisdiction over appeals from the district court in bankruptcy matters extends to "final decisions, judgments, orders, and decrees" entered by the district court under § 158(a).[4] 28 U.S.C. § 158(d)(1); see also Kubicik v. Apex Oil Co. (In re Apex Oil Co.), 884 F.2d 343, 346 (8th Cir. 1989). Although district courts have discretion to hear appeals from interlocutory bankruptcy court orders under § 158(a), our review is limited to final orders. See In re Yukon Energy Corp., 138 F.3d at 1258, citing In re Woods Farmers Co-op. Elevator Co., 983 F.2d 125, 127 (8th Cir. 1993). Our jurisdiction therefore depends on whether the bankruptcy court order which the plans seek to appeal was a final appealable order. See Gaines v. Nelson (In re Gaines), 932 F.2d 729, 731 (8th Cir. 1991); In re Apex Oil Co., 884 F.2d at 346-47.

To determine the finality of a bankruptcy court order we consider "the extent to which (1) the order leaves the bankruptcy court nothing to do but execute the order; (2) the extent to which delay in obtaining review would prevent the aggrieved party

_____

[4]Section 158(a) describes the appellate jurisdiction of district courts in bankruptcy matters and provides in relevant part, "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; . . . and (3) with leave of the court, from other interlocutory orders and decrees" of bankruptcy court judges.

-5-

from obtaining effective relief; (3) the extent to which a later reversal on [the contested] issue would require recommencement of the entire proceeding." Official Comm. of Unsecured Creditors v. Farmland Indus., Inc. (In re Farmland Indus.), 397 F.3d 647, 650 (8th Cir. 2005) (internal marks and citations omitted). Although this standard is more flexible than in nonbankruptcy contexts, an order entered before the conclusion of a bankruptcy case is not subject to review under § 158(d) unless it finally resolves a discrete segment of the underlying proceeding. Id. at 649-50, citing In re Woods Farmers Co-op. Elevator Co., 983 F.2d at 127.

The plans contend that all three factors are met here, arguing that the order denying their show cause motion finally resolved a discrete dispute over their right to contributions under a prior order, that the plans may be prejudiced by delay in resolution of their appeal, and that reversal would require recommencement of the bankruptcy proceedings. The trustee responds that none of the three finality factors are present, for the order denying the motion to show cause did not dispose of the plans' claim for unpaid contributions and even if the order were to be reversed, that would not lead to reopening of the bankruptcy proceedings. He further argues that effective relief will only be available through allowance, disallowance, or payment of the plans' claim which depends on the outcome of the bankruptcy proceedings, not on a court finding of contempt.

Denial of the show cause order did not leave the bankruptcy court with nothing more to do than execute the order. There remained the Chapter 7 bankruptcy case and a separate adversary proceeding for unpaid contributions. See In re Gaines, 932 F.2d at 732. While ongoing bankruptcy proceedings do not preclude review of an order which finally adjudicates a relevant unit of the case, see McGinnis v. Jenkins & Assoc., Inc. (In re McGinnis), 296 F.3d 730, 731 (8th Cir. 2002) (per curiam), the denial of the show cause motion here did not resolve any discrete segment of the bankruptcy proceedings. See In re Woods Farmers Co-op. Elevator Co., 983 F.2d at 127. The order did not dispose of the plans' claim for unpaid contributions, but instead decided that the issue would be more appropriately determined through the

separate adversary proceeding. Further action was thus scheduled to resolve the status of the plans' claim for contributions. See id.; In re Gaines, 932 F.2d at 732. The denial of the show cause order did not leave the bankruptcy court with nothing more to do than execute that order.

As to the second factor of the finality test, any delay in reviewing the bankruptcy court order would not itself prevent the plans from obtaining effective relief. The plans sought the same monetary relief for unpaid contributions in a separate adversary proceeding. All or part of their claim might be paid through the normal course of the bankruptcy proceedings, depending on how much money the trustee compiles and on the priority assigned to their claim. The plans argue that they may be prejudiced by waiting for the end of the bankruptcy case and that later appeal may be futile if insufficient funds remain to pay their claim, but this potential prejudice does not directly result from the denial of the motion to show cause. Rather, the bankruptcy code dictates the order of distribution for the property of a Chapter 7 debtor, see 11 U.S.C. § 726, and the trustee's duties with regard to the Chapter 7 case, see 11 U.S.C. § 704. The second factor also does not weigh in the plans' favor.

Even if the denial of the motion to show cause were later reversed, that would not require reopening the bankruptcy proceedings. Instead, it would merely revive the question of whether the trustee should be held in contempt and that could likely be resolved without reopening the bankruptcy proceedings. Moreover, the denial of the motion allowed the bankruptcy case to continue and the plans' claim is included in the Chapter 7 proceedings. Cf. Coleman Enter., Inc. v. QAI, Inc. (In re Coleman Enter., Inc.), 275 B.R. 533, 538 (8th Cir. BAP 2002) (concluding that denial of a motion to dismiss is not a final order because it allows the case to proceed instead of terminating the case or any aspect of it). We thus conclude that none of the three finality factors are satisfied here.

A denial of a motion to show cause during the course of ongoing litigation does not generally qualify as an appealable final order, but is instead viewed as an

unreviewable pretrial order or interlocutory decision.  See United States v. Brakke, 813 F.2d 912, 913 (8th Cir. 1987) (per curiam); see also Elscint, Inc. v. First Wisconsin Finan. Corp. (In re Xonics), 813 F.2d 127, 130 (7th Cir. 1987) ("refusal to hold a party in civil contempt of court is not an appealable final order when other parts of the litigation remain unresolved."), citing Fox v. Capital Co., 299 U.S. 105 (1936). Although the more liberal standard of finality in bankruptcy cases may  occasionally permit a court of appeals to review an order denying a motion for contempt, the court should first determine that the order is final and appealable so as to ensure that it has jurisdiction over the appeal.  See Commodore Holdings, Inc. v. Exxon Mobil Corp., 331 F.3d 1257, 1259 (11th Cir. 2003) (per curiam).  In Commodore Holdings, the Eleventh Circuit concluded that an order denying a motion for contempt was reviewable because it "ended the particular controversy" regarding violation of the automatic stay by certain entities.  Id.  In contrast, the order before us did not "have the effect of finally settling the parties' rights" as to any discrete portion of the case. In re Gaines, 932 F.2d at 731-32 (emphasis added).

The plans also cite a case from 1911, In re Gill, 190 F. 726 (8th Cir. 1911), arguing that the denial of a show cause order there was reviewed as a final order.  That case did not arise under the current Bankruptcy Code, however, and it is inapposite because there appellate review was undertaken after denial of motions for judgment on the pleadings and for payment.  See id. at 727. Furthermore, In re Gill does not shed any light on the central question here, which is how our test for finality applies to denials of show cause motions.  Accordingly, we see no reason to depart from the general rule that a denial of a motion to show cause is not a final order when the underlying litigation remains unresolved.[5]

---

[5]The plans refer to several nonbankruptcy cases in which denial of a motion to show cause was reviewed for abuse of discretion.  See, e.g., Chicago Truck Drivers Union Pension Fund v. Brotherhood Labor Leasing, 207 F.3d 500 (8th Cir. 2000); Hazen v. Reagen, 16 F.3d 921 (8th Cir. 1994); JTH Tax, Inc. v. H&R Block E. Tax Servs., Inc., 359 F.3d 699 (4th Cir. 2004).  These cases are distinguishable because they address motions for contempt brought after a case or an issue had been finally

Review of the order denying the motion to show cause would also run the risk of piecemeal appellate litigation since an appeal of the separate adversary proceeding is also pending. As the Third Circuit recently observed, "[t]hough flexibility is a hallmark of the concept of finality in the bankruptcy context, appellants cannot be permitted to appeal in a manner which results in numerous appeals of the same issue and specifically runs the risk of engendering inconsistent decisions in this court." In re Truong, 513 F.3d 91, 94-95 (3d Cir. 2008) (per curiam). The limitation of our jurisdiction under § 158(d) to final orders has the purpose of avoiding fragmented appeals, and it would be inconsistent with this purpose to read § 158(d) to authorize review of the order denying the show cause motion. See Bourne v. Northwood Prop., LLC (In re Northwood Prop.), 509 F.3d 15, 21 (1st Cir. 2007); see also Cochrane v. Vaquero Inv., 76 F.3d 200, 204 (8th Cir. 1996).

Seeking alternate grounds to support their appeal, the plans argue that the order was final and appealable under the collateral order doctrine. To be reviewable under this doctrine, an order must meet three requirements: (1) it must conclusively determine the disputed question; (2) it must resolve an important question completely separate from the merits of the action; and (3) it must be effectively unreviewable on appeal from a final judgment. See Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1053 (8th Cir. 2006), citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949); see also Lurie v. Blackwell (In re Popkin & Stern), 105 F.3d 1248, 1250 (8th Cir. 1997). This doctrine covers only a "small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action." Cohen, 337 U.S. at 546. The order denying the motion to show cause does not qualify as a collateral order because it did not conclusively determine the plans' claim to the contributions and did not resolve a critical issue separate from the

---

resolved by a court, while the motion here occurred in the midst of an ongoing bankruptcy case. See generally 15B Wright, Miller & Cooper, Federal Practice & Procedure: Juris. 2d § 3917 ("refusal to issue the order [to show cause] is final if it constitutes a refusal to impose sanctions for a claimed violation of a final decree.") (footnotes omitted).

merits of the bankruptcy proceeding. The collateral order doctrine is not implicated here.

The plans also contend that even assuming that the order denying the show cause motion was not a final order, the district court should have granted leave for an interlocutory appeal based on alleged errors of law by the bankruptcy court. A district court may hear an interlocutory appeal under 28 U.S.C. § 158(a) if a party files a motion for leave to appeal and it is granted. If that motion has not been filed, a district court may construe a timely notice of appeal as the required motion for leave to appeal. See Fed. R. Bank. P. 8003(c). The decision to deny leave to appeal an interlocutory bankruptcy order is purely discretionary. In re Coleman Enter., 275 B.R. at 538; see also Kovitz v. Tesmetges (In re Tesmetges), 86 B.R. 21, 23 (E.D.N.Y. 1988). In contrast to district courts, we have no jurisdiction to consider appeals from interlocutory bankruptcy court orders. In re Yukon Energy Corp., 138 F.3d at 1258 (citation omitted).

For these reasons we dismiss the appeal for lack of jurisdiction.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent.

What is involved here is not the final distribution of any assets in the estate, but the failure of the then-Chapter 11 trustee to make immediate contributions to pension plans. From this perspective, application of this Court's three-part test indeed supports a conclusion that the bankruptcy court's order is a final appealable order. Accordingly, I would reverse and remand to the district court for further proceedings.

First, to be considered a final appealable order, the bankruptcy court's order "need not resolve all issues raised by the bankruptcy for that order to be final and reviewable . . . [rather] the order must resolve all of the issues pertaining to the

*discrete* claim for which review is sought." First Nat'l Bank v. Allen, 118 F.3d 1289, 1293 (8th Cir. 1997) (emphasis added) (citation omitted). The majority is correct that even after the bankruptcy court's order, there remained the Chapter 7 proceedings and a separate adversarial proceeding. The pronouncement that the bankruptcy proceedings are ongoing, however, does not resolve the finality inquiry. Indeed, in "bankruptcy proceedings the courts take a more liberal view of what constitutes a separate dispute for purposes of appeal." In re Leimer, 724 F.2d 744, 745 (8th Cir. 1984). And under this liberal view, the trustee's liability to the plans during the Chapter 11 proceedings was a *separate* and discrete dispute.

The Chapter 11 debtor in possession continued the operation of the business and the bankruptcy judge had ordered contemporaneous payments to the plans during operations. Here the plans sought those past due payments. The order denying issuance of a contempt order determined that the plans could not get paid *now* for those past due obligations. Thus, I believe this order should be deemed final, resolving the issue of no *immediate* payment.

Second, contrary to the majority's conclusion, prejudice does directly result from the denial of the motion to show cause. If the plans could not seek review until the conclusion of the Chapter 7 proceedings, the funds in question may be completely disposed of, thereby precluding effective relief for the plans. Indeed, this Court has found prejudice in such circumstances. See In re Olson, 730 F.2d 1109, 1110 (8th Cir. 1984) (concluding that prejudice exists when denying jurisdiction to review the claim would force the creditor to seek review of the bankruptcy court's order at the conclusion of the proceedings and at that point the debtor may have spent all the funds in question).

Third, the majority concludes that even if the denial of the motion to show cause were later reversed, this ruling would not require reopening the bankruptcy proceedings as the issue of whether the trustee should be held in contempt could "likely be resolved without opening the bankruptcy proceedings." The majority,

however, cites no authority for this conclusion. If after the bankruptcy proceedings have concluded it was determined that the plans were entitled to payment by the trustee, where would the plans turn to for payment if the funds were completely disbursed? The funds may have to be recouped from the estate thereby creating a nightmare for the bankruptcy court and all interested parties.

As I see it, all three factors favor finality. Accordingly, I would reverse and remand to the district court with instructions to review on appeal the ruling of the bankruptcy court here in question.

_____